UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBIN RAY,

                           Plaintiff,

v.                                          **DECISION AND ORDER**
                                                            08-CV-488S
JAMES P. KLYCZEK AND STATE UNIVERSITY
OF NEW YORK NIAGARA COUNTY COMMUNITY
COLLEGE,

                           Defendant.
_____

## I.  INTRODUCTION

Plaintiff Robin Ray commenced this action in June 2008, alleging violations of her civil rights, pursuant to 42 U.S.C. §§ 1981, 1983, and 1985, and employment discrimination in violation of New York State Human Rights Law.  Pending before this Court is the motion of Defendants James P. Klyczek and State University of New York Niagara County Community College seeking summary judgment dismissing the complaint.  For the reasons discussed below, this Court finds the matter fully briefed and oral argument unnecessary, and concludes that Defendant's motion should be granted.

## II.  BACKGROUND

**A.**      **Factual Background**

Plaintiff, an African-American woman, was first hired by Defendant State University of New York Niagara County Community College ("NCCC") as a Technical Assistant in December 1988, and she served in that position until June 30, 2000 (Affidavit of Plaintiff Robin Ray, Docket No. 48, ¶¶ 2-3). In May 2000, she was notified of her appointment as

1

a member of the faculty, specifically to a term position as an Instructor/Counselor in the Financial Aid Office for the period of July 1, 2000 through August 31, 2001. (Pl's Aff. ¶ 4; Declaration of Defendant James P. Klyczek, Docket No. 41-3, ¶¶ 6; Docket No. 41-13 at 14). Plaintiff was reappointed to several one year terms thereafter, with her title becoming "Assistant Professor/Counselor" in 2002. (Pl's Aff. ¶ 5; Docket No. 41-7 at 2). Her final reappointment in 2004 was scheduled to end on August 31, 2005. (Pl's Aff. ¶ 5).

On March 24, 2005, Ray was informed by letter from Defendant James P. Klyczek, President of NCCC, that her appointment would not be renewed for the 2005-2006 academic year. (Pl's Aff. ¶ 6; Docket No. 41-9). An objection to this non-renewal was raised by the NCCC Faculty Association on the ground that, pursuant to the governing collective bargaining agreement ("CBA"), Plaintiff was automatically entitled to a tenured, continuing appointment based upon her length of service. (Klyczek Decl. ¶¶ 19-20; Docket No. 41-11; Docket No. 41-13 at 8). The CBA limited the use of term appointments for faculty members holding full academic rank, such as Plaintiff, to a period of no more than five years. (Klyczek Decl. ¶¶ 19; Docket No. 41-11; Docket No. 41-13 at 8). The CBA also provided that reappointment at the end of five years of service "shall be a continuing appointment;" in other words, a tenured appointment for an indefinite period (Docket No. 41-11; Docket No. 41-13 at 8). In his response to the Faculty Association, Klyczek denied that Plaintiff would be automatically entitled to tenure at the end of her current term, but he acknowledged that allowing Plaintiff's current term to extend beyond June 30, 2005 would violate the CBA's five-year limitation, inasmuch as her initial term appointment began on July 1, 2000. (Klyczek Aff. ¶ 20; Docket No. 41-11).

Klyczek subsequently recommended to NCCC's Board of Trustees that Plaintiff's

2

final term appointment be shortened by two months to avoid a violation of the CBA. (Klyczek Aff. ¶¶ 20-21). By letter dated May 26, 2005, Klyczek informed Plaintiff that the Board of Trustees had approved that amendment to her appointment, and that her employment term would end on June 30, 2005 instead of August 31, 2005. (Pl's Aff. 8; Klczek Aff. ¶ 20; Docket No. 41-12). Plaintiff nonetheless reported to work on July 5, 2005 pursuant to the terms of her original 2004-2005 appointment, and left under protest when asked to leave (Pl's Aff. ¶ 9). A grievance was then filed by the Faculty Association on her behalf in accordance with the CBA, resulting in arbitration. (Pl's Aff. ¶¶ 9-10; Arbitrator's Opinion and Award ("Arb. Opinion"), Docket No. 41-13, at 3-4, 18). Following a hearing, the arbitrator determined that NCCC had violated the terms of the CBA by amending the period of Plaintiff's term appointment to end on June 20, 2005, and awarded her salary and benefits due from July 1, 2005 to August 31, 2005. (Pl's Aff. ¶ 10; Arb. Opinion at 36, 48).

**B.     Procedural Background**

Plaintiff commenced the instant action in this Court on June 30, 2008, alleging that Defendants discriminated against her on the basis of race in violation of New York State Human Rights Law (first and second causes of action); denied her right to make and enforce contracts on the basis of race in violation of 42 U.S.C. § 1981 (third cause of action); deprived her of property without due process in violation of 42 U.S.C. § 1983 (fourth cause of action); and conspired to violate her civil rights in violation of 42 U.S.C. § 1985 (3). (Complaint, Docket No. 1, ¶¶ 28-44). After Defendants filed their Answer (Docket No. 4), they filed a motion to dismiss pursuant to Rule 12 (b)(6) and (c), which this Court construed as only a motion for judgment on the pleadings pursuant to Rule 12 (c). (Docket Nos. 16, 31). Plaintiff withdrew her claims under 42 U.S.C. § 1985 and the New York State

Human Rights Law in response. (Docket No. 21). This Court then dismissed Plaintiff's fourth cause of action in its entirety, and her third cause of action to the extent that she alleged that she was denied the same opportunity as white employees to enter into a new contract, i.e. the denial of a continuing, tenured appointment, both on statute of limitations grounds. (Docket No. 31 at 3-6). Remaining is Plaintiff's § 1981 claim that Defendants' early termination of her existing appointment was improperly based on her race. (Docket No. 31 at 5). Defendant now moves for summary judgment on that claim.[1]

### III. DISCUSSION

Summary judgment is appropriate, even in a discrimination case, where the materials in the record, including depositions, documents, affidavits or declarations, and stipulations, show that there are no genuine issues regarding any material fact and that the movant is entitled to judgment as a matter of law. see FED.R.CIV.P. 56 (a), (c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000), cert denied 540 U.S. 811 (2003). A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kaytor v. Electric Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could

---

[1] In support of their Motion for Summary Judgment (Docket No. 41), Defendants submitted the Declaration of Joshua Feinstein, Esq., with Exhibits A-K (Docket Nos. 41-1 and 41-2); the Declaration of Defendant James P. Klyczek, Ph.D., with Exhibits A-K (Docket Nos. 41-3 through 41-13); a supporting Memorandum of Law (Docket No. 43), and a Statement of Undisputed Facts (Docket No. 44). Plaintiff responded with the Affidavit of Plaintiff Robin Ray (Docket No. 48), an Opposing Statement of Undisputed Facts (Docket No. 49), and a Memorandum of Law in Opposition (Docket No. 51). Defendants also filed a Reply Memorandum of Law (Docket No. 54).

return a verdict for the nonmoving party.' " Weinstock 224 F.3d at 41, quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reaching a determination, the record is not to be considered "in piecemeal fashion, trusting innocent explanations for individual strands of evidence; rather, [a court] must 'review all of the evidence in the record.' " Kaytor, 609 F.3d at 545, quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Further, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

Plaintiff's only remaining claim is her allegation that Defendants violated her right to enforce her 2004-2005 term employment contract in violation of 42 U.S.C. § 1981. This statute provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as enjoyed by white citizens." 42 U.S.C. § 1981 (a). Thus, "discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment" is prohibited. Patterson v. County of Oneida, N.Y., 375 F.3d 206, 224 (2d Cir. 2004). In determining a motion for summary judgment on a § 1981 claim, courts apply the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Ruiz v. County of Rockland, 609 F3d 486, 491 (2d Cir. 2010).

Under this framework, a plaintiff must first establish a prima facie case by demonstrating (1) that she was a member of a racial minority; (2) defendants' intention to

discriminate on the basis of race; and (3) the discrimination concerned one of the activities enumerated in the statute, such as the right to enforce a contract. Brown v. City of Oneonta, New York, 221 F.3d 329, 339 (2d Cir. 2000), cert denied 534 U.S. 816 (2001). This initial burden is de minimus, and once a plaintiff meets it, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for alleged discriminatory action. See Ruiz, 609 F3d at 492; see also Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000), cert denied 530 U.S. 1261 (2000)(describing a plaintiff's initial burden as minimal). "Upon Defendant's articulation of such a non-discriminatory reason . . . , the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture." Weinstock, 224 F.3d at 42. A plaintiff must then come forward with sufficient evidence that the articulated reason is a mere pretext for actual discrimination, as well as sufficient evidence upon which a trier of fact may reasonably conclude that plaintiff's assertion of intentional discrimination is true. Weinstock, 224 F.3d at 42, citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." Weinstock, 224 F.3d at 42.

    In the instant case, there is no dispute that Plaintiff is a member of a racial minority or that Defendants' amendment to her employment term adversely affected her right to enforce her employment contract. At issue is whether Plaintiff is able to show prima facie evidence that Defendants intentionally discriminated against her on the basis of race. Although this burden is minimal, Plaintiff must nonetheless "offer[] evidence adequate to 'raise[ ] an inference of discrimination.' " Meiri v. Dacon, 759 F.2d 989, 996 (2d Cir. 1985), cert denied 474 U.S. 829 (1985), quoting Furnco Const. Corp. v. Waters, 438 U.S. 567,

577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).  An adverse employment action alone is insufficient to raise such an inference.  "[A]n employer may fire an employee for a good reason, bad reason, a reason based on erroneous facts, or no reason at all, so long as its action is not based on a discriminatory reason." Valentine v. Standard & Poor's, 50 F.Supp.2d 262, 290 (S.D.N.Y. 1999), affd 205 F3d 1327 (2d Cir. 2000).

Plaintiff fails to meet this minimal burden.  Plaintiff testified at her deposition that Defendant Klyczek never made any remarks to her or, to her knowledge, to anyone else that suggested he was racist. (Deposition of Plaintiff Robin Ray, Docket No. 41-2, at 126). When asked why she believed that Klyczek had a racial bias against her, Plaintiff answered that she was "referring to him cutting my contract and removing me from my position," and nothing else.  (Pl's Dep. at 126).  Plaintiff did not know if anyone else involved in the decision to shorten her contract had a racial bias toward her, and she agreed that she had no evidence that anyone had such a bias. (Pl's Dep. at 126-127). Plaintiff subsequently states in her opposing affidavit that, "based upon information and belief," four other employees were eligible for continuing, tenured appointments at the same time as she was eligible, those four employees were Caucasian, and, unlike Plaintiff, they were each awarded continuing appointments. (Pl's Aff. ¶ 12).  The lack of specificity renders this statement conclusory, and thus insufficient to raise a prima facie inference of discriminatory.  See Ghose v. Century 21, Inc.,  12 Fed. Appx. 52, 55 (2d Cir. 2001); Vaughn v. City of New York, No. 06-CV-6547, 2010 WL 2076926, *9 (E.D.N.Y.,2010). Further, this assertion contradicts Plaintiff's earlier deposition testimony that the only reason she believed she was discriminated against was the fact of the adverse employment action itself, and as such must be disregarded on a motion for summary

judgment.  See Estate of Hamilton v. City of New York, 627 F.3d 50, 54 (2d Cir. 2010); Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 24 (1985), cert denied 474 U.S. 851 (1985).

Even assuming Plaintiff had established a prima facie case, Defendants articulated a legitimate, nondiscriminatory reason for alleged discriminatory action.  See Ruiz, 609 F3d at 492.  Defendants argue that the sole purpose of the amendment to Plaintiff's 2004-2005 appointment was to avoid an argument by the Faculty Association that Plaintiff, who absent an amendment would have served in term appointment for over five years, was automatically entitled to be reappointed to a continuing, tenured appointment. (Klyzek Decl. ¶¶ 15, 19-20; Def's Mem. of Law, Docket No. 43, at 7-8).  Klyczek further indicated that because of the provisions of the governing CBA, if he reappointed Plaintiff in 2005, it would have had to be to a continuing, tenured appointment. (Klyzek Decl. ¶ 15).  He found that he "could not commit NCCC's limited resources to a tenured position for a faculty member who had not demonstrated proficiency with respect to key job functions and whose direct supervisor was questioning whether her position was even necessary, given the changing needs of his department." (Id. ¶ 15).  Klyczek is referencing, among other things, Defendants' need for Plaintiff to become proficient in the Banner Information System implemented by NCCC in 2003 to track admission, enrollment, and financial aid information for students. (Klyczek Decl. ¶ 8-9; Def's Mem. of Law at 8).  Plaintiff's February 2004 performance review by Klyczek included a recommendation that Plaintiff prioritize her daily duties to allow sufficient time to avail herself of continuing education opportunities, such as Plaintiff's training on the Banner Information System. (Klyszek Decl. ¶ 8). Although Plaintiff needed a "high level of proficiency" with this system to function effectively in her position as Counselor in the Financial Aid Office, which required in part that she serve as liaison

between the Financial Aid Office and NCCC's Office of Information Technologies, concerns were raised with the Financial Aid Director at the end of 2004 regarding Plaintiff's lack of understanding of financial aid processes and regarding her ability to use the Banner system to the extent required. (Klyczek Decl. ¶¶ 9-12; Docket No. 41-5).

Plaintiff does not dispute that she lacked proficiency in the Banner System, noting instead that she organized a meeting that produced a memorandum of recommendations to solve the Banner "functional user" problem. (Pl's Aff. ¶ 21; Klyczek Decl. ¶ 12; Docket No. 41-6 (memo)). It was asserted in that memo, signed by Plaintiff and four coworkers, that there had been confusion over what Plaintiff's role was with respect to Banner system concerns, and it was questioned whether such an expansive task should have been included with Plaintiff's duties, as it took her away from counseling. (Docket No. 41-6). The memo also outlined several recommended solutions, including either the reassignment of the functional user job duties to another employee or to send Plaintiff "away for Banner training immediately and the college will need to hire someone to do her financial aid counseling duties," which would take "many months before [Plaintiff] is able to provide the assistance the office needs right now." (Docket No. 41-6; see Pl's Aff. ¶21-24). Plaintiff also highlights that the Vice President of Student Affairs, Bassam M. Deeb, recommended Plaintiff for reappointment. (Pl's Aff. ¶ 26; see Docket No. 41-8 (Deeb memorandum)). Plaintiff specifically avers that, having had nine months to review her job performance at the time of his recommendation, Deeb "should have been able to evaluate [her] correctly and . . .[i]t is [her] belief that an additional three months would not have affected the outcome." (Pl's Aff. ¶ 26). Notably, Deeb's recommendation is expressly tempered by his "serious reservations" based upon "incongruent evaluations and what [he had] observed in the last

9

nine months" and evaluations which had highlighted some deficiencies in the scope of Plaintiff's work. (Docket No. 41-8).  Further, Deeb had "concerns whether the role of a counselor is the required type of position for this office." (Docket No. 41-8).

Finally, Defendants submitted evidence that, contrary to Plaintiff's assertion, Defendants also chose not to renew the appointments of seven other faculty members since Klyczek became NCCC's president in 2002. (Declaration of Donald Armstrong, Docket No. 54-1, ¶ 2 (Armstrong served as NCCC's Human Resources Director from 1989 to 2006)). Of the five faculty members denied reappointment in 2005, the same year as Plaintiff, four were white and one was Hispanic. (Armstrong Decl. ¶ 2).  The conclusory assertion in opposition that Plaintiff "was one of the only employees ever not granted tenure in the history of NCCC" fails to raise a material question of fact on this issue, especially as she further asserts that she "was the only African American denied such tenure rights," thus implying that all other employees who were denied tenure were not African American. (Pl's Mem. of Law in Opp'n, Docket No. 51, at 7).  Defendant is therefore entitled to summary judgment on Plaintiff's remaining cause of action, and the complaint is dismissed.

## IV.  CONCLUSION

For the reasons stated above, Plaintiff's remaining § 1981 claim that Defendants' early termination of her existing appointment was improperly based on her race must be dismissed.  Defendants' Motion for Summary Judgment is therefore granted in its entirety.

## V.  ORDERS

IT HEREBY IS ORDERED that Defendants' Motion for Summary Judgment dismissing the complaint (Docket No. 41) is GRANTED in its entirety;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case;

SO ORDERED.

Dated:  February 15, 2012
         Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Judge
